UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| ROBERT REMEDIES | CIVIL ACTION NO. 23-454 |
| VERSUS | JUDGE DONALD E. WALTER |
| ADVANCED EMISSIONS SOLUTIONS INC. ET AL. | MAGISTRATE JUDGE MCCLUSKY |

---

### MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendant Advanced Emissions Solutions Inc. ("AES"). See Record Document 55. In response, Plaintiff Robert Remedies ("Remedies") filed an opposition, and AES replied. See Record Documents 66 and 68. For the reasons stated below, AES's motion for summary judgment (Record Document 55) is **GRANTED**.

### BACKGROUND

This is a workplace injury case. On April 22, 2021, Remedies was an employee of ADA Carbon Solutions Red River LLC ("ADA") and was injured in a fire at ADA's plant in Coushatta, Louisiana ("ADA's Plant"), while in the course and scope of his employment. See Record Documents 55-4 at 14 and 74 at 4. Remedies filed suit against both ADA and AES.[1]

ADA is a Delaware company with its principal place of business in Coushatta, Louisiana. See Record Document 55-5 at 2. AES is a Delaware corporation founded in 1996 and

---

[1] ADA also filed a motion for summary judgment, and Remedies opposed the motion. See Record Documents 58 and 65. Remedies adopted and incorporated the exhibits attached to Record Document 65 filed with this Court in accordance with Rule 10(c). See Fed. R. Civ. P. 10(c).

headquartered in Greenwood Village, Colorado. See Record Document 55-6 at 3. AES is the parent company of ADA. See Record Document 55-5 at 2.

AES operates as a parent company, and its subsidiaries provide various emission and purification solutions to the power generation, industrial boiler, and municipal water industries. See id. As a parent company, AES directs long-term strategy and allocation of capital resources on behalf of its subsidiaries. See Record Document 55-5 at 4. AES's subsidiaries are registered as distinct corporate entities, and they are registered to do business in the states and/or foreign countries where they operate. See Record Document 55-6 at 2. ADA controls its employees' work output, pays its employees, and trains its employees on how to perform their jobs safely. See Record Documents 55-5 at 2 and 55-7 at 2.

According to AES's Chief Technology Officer, Joe Wong ("Wong"), "AES does not and never has exercised control over the day-to-day management or operations of its subsidiaries, including ADA." Record Document 55-5 at 2. On the day of the injury,[2] ADA's management team controlled the safety, supervision, and management of ADA's employees at ADA's Plant. See id. at 3. ADA was responsible for the safety of its employees, including Remedies at the time of his workplace injury. See id. Further, on April 22, 2021, AES did not instruct ADA leadership nor any ADA employee on how to run the day-to-day activities at ADA's Plant or how to perform work. See id. at 2.

ADA's Vice President of Manufacturing, Dennis Sewell ("Sewell"), testified that "daily safety briefings were conducted by ADA supervisors[,]" and "safety policies and procedures were developed and maintained by ADA and not AES." Record Document 55-7 at 2. Wong confirmed

---

[2] A more detailed account of the facts can be found in the Court's ruling (Record Document 76) on ADA's motion for summary judgment (Record Document 58).

that ADA maintains and develops its own safety policies, procedures, and Occupational Safety and Health Administration ("OSHA") logs that are separate and apart from AES. See Record Document 55-5 at 4.

On May 24, 2024, Remedies filed a motion to amend his complaint. See Record Document 72. This Court granted his motion. See Record Document 73. In his amended complaint, Remedies alleges both negligence and intentional tort claims against AES. See Record Document 74 at 5-8. Remedies alleges that AES is liable for its own allegedly negligent conduct in failing to ensure the safety of ADA's Plant, failing to ensure ADA's Plant was free of defects, and failing to protect workers, like Remedies, from unsafe conditions. See id. Furthermore, Remedies contends that there are "genuine issues of material fact as to whether AES's conduct rises to the level of an intentional tort under the 'substantial certainty' standard." Record Document 66 at 14. On April 12, 2024, AES filed this motion for summary judgment, arguing that AES did not owe a duty to Remedies and that its conduct did not rise to the level of an intentional tort. See Record Documents 55-2 and 68.

## **LAW AND ANALYSIS**

**A. Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. See id. "[A] party

3

seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (quoting Fed. R. Civ. P. 56(c)).

**B. Louisiana Negligence Claims.**

As previously mentioned, Remedies alleges that AES is liable for its own allegedly negligent conduct in failing to ensure the safety of ADA's Plant, failing to ensure ADA's Plant was free of defects, and failing to protect workers, like Remedies, from unsafe conditions. See Record Document 74 at 5-8. Subject matter jurisdiction in this matter is based on diversity. Thus, Louisiana tort law applies. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938) (holding that a federal court sitting in diversity jurisdiction applies the substantive law of the forum state). The first inquiry is whether AES owed any duty to Remedies. A parent corporation generally does not incur any duty with respect to the employees of its subsidiaries by the mere fact of its ownership. See Bujol v. Entergy Servs., Inc., 922 So.2d 1113, 1127 (La. 2004). "Additionally, a parent corporation is not responsible for the working conditions of its subsidiary's employees merely on the basis of a parent-subsidiary relationship." Stanley v. Airgas-Sw., Inc., 2016-0461, 2017 WL 1807984, at *4 (La. App. 1 Cir. 5/4/17) (citing Bujol, 922 So.2d at 1132).

"Under Louisiana law, one who does not owe a duty to act may assume such a duty by acting." Hebert v. Rapides Par. Police Jury, 974 So.2d 635, 643 (La. 2007). To determine whether defendants like AES owe a duty to the employees of their subsidiaries, Louisiana courts apply

4

Section 324A of the Restatement (Second) of Torts. See Bujol, 922 So.2d at 1128. Section 324A provides,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Id. (quoting Restatement (Second) of Torts § 324A). "Although the existence of a duty is a question of law for the Court, the factual predicates for the imposition of that duty are a question for the fact finder." Morvant v. Oil States Int'l, Inc., 3 F. Supp. 3d 561, 565 (E.D. La. 2014) (citing Johnson v. Abbe Eng'g Co., 749 F.2d 1131, 1133-34 (5th Cir.1984)).

In Bujol, two men were severely injured and one was killed when a flash fire occurred during valve maintenance at an air separation plant. See Bujol, 922 So.2d at 1120. The employer paid workers' compensation benefits, but the plaintiffs sued the parent corporation for failure to supervise the facility, failure to prescribe proper procedures, and punitive damages. See id. at 1120-21. The plaintiffs alleged that the accident could have been prevented if the victims had used "barrier walls" as a shield from a possible fire. Id. at 1121-22.

The Louisiana Supreme Court in Bujol followed the analytical framework of Section 324A of the Restatement and stated, "In determining whether a parent corporation affirmatively undertook the duty of safety owed by its subsidiary, courts have looked to the scope of the parent's involvement, the extent of the parent's authority, and the underlying intent of the parent . . . ." Id. at 1131. The Louisiana Supreme Court further noted that, under Louisiana jurisprudence, "parties

who voluntarily assume certain duties for workplace safety must perform those duties in a reasonable and prudent manner." Id. at 1129. To find that the parent company assumed the duty, the Louisiana Supreme Court required "some proof of a positive undertaking" for workplace safety, stating that "[n]either mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for employees of a subsidiary corporation." Id. at 1131 (citing Muniz v. Nat'l Can Corp., 737 F.2d 145, 148 (1st Cir. 1984)). "[N]either a parent's concern with safety conditions and its general communications with the subsidiary regarding safety matters, nor its superior knowledge and expertise regarding safety issues, will create in the parent corporation a duty to guarantee a safe working environment for its subsidiary's employees under [Section] 324A." Id. at 1133.

In Bujol, the evidence revealed that the parent corporation issued a non-mandatory safety recommendation to some of its subsidiaries with respect to the use of barrier walls. See id. at 1133-34. Each subsidiary had the choice of whether to follow the safety recommendation. See id. at 1134. After reviewing the evidence, the Louisiana Supreme Court reversed the jury's findings and held that "the evidence presented did not establish that [the parent corporation] affirmatively undertook to provide [the subsidiary]'s employees with a reasonably safe place to work under [Section] 324A, with regard to the entire plant or with regard to providing barrier walls around oxygen valves." Id. at 1133.

In Morvant, an employee was tragically killed in a workplace accident while fabricating a "501 wall." Morvant, 3 F. Supp. 3d at 563. The employee worked for Oil States Skagit Smatco L.L.C. ("OSSS"). See id. The surviving spouse and children of the employee brought claims against two parent companies of OSSS—Oil States Industries, Inc. ("OSI") and Oil States International, Inc. ("International")—for their alleged negligence in "failing to adequately manage,

6

supervise, and direct their subsidiary in the performance of its operations and/or implement corporate safety policies." Id. at 564. The Eastern District of Louisiana reached two different outcomes for the parent companies based on the evidence. See id. at 569-70.

The evidence revealed that "OSI provided a detailed safety management system which specifically mentioned crushing as a potential hazard, required that these standards be used across all OSI subsidiaries, conducted periodic audits of OSSS, and collected monthly [health, safety, and environmental] documentation." Id. at 569 (internal citations omitted). Additionally, OSI also had control over the health, safety, and environmental policies at OSSS, the safety management system that is in place at OSSS displayed the OSI logo on the cover and OSI's name on every page, and OSI "participated in all aspects of the safety management system, indicating its intent to be closely involved with the safety policies of its subsidiaries." Id. Therefore, the court denied the motion for summary judgment in part and found that the plaintiffs raised a genuine issue of material fact with respect to whether OSI affirmatively undertook a duty of safety regarding OSSS's employees. See id.

In contrast, the court found that no duty was owed to the employee by the other parent company, International. See id. at 570. The evidence revealed uncontroverted testimony that International had no involvement with any safety matters at OSSS. See id. The only evidence produced with respect to International was a document relating to disciplinary procedures for all employees and did not pertain to health, safety, and environmental issues. See id. Therefore, the court granted the motion for summary judgment in favor of International. See id.

Here, Remedies was an employee of ADA. See Record Document 55-4 at 14. He was never an employee of AES. See id. AES employees evaluate long-term strategy and the allocation of capital resources on behalf of AES's subsidiaries. See Record Document 55-5 at 2. ADA controls

7

its employees' work output, pays its employees, and trains its employees on how to perform their jobs safely. See Record Documents 55-5 at 2 and 55-7 at 2. It is undisputed that "AES does not and never has exercised control over the day-to-day management or operations of its subsidiaries, including ADA." Record Document 55-5 at 2. On the day of the injury, ADA's management team controlled the safety, supervision, and management of ADA's employees at ADA's Plant. See id. Wong testified that ADA was responsible for the safety of its employees, including Remedies at the time of his workplace injury. See id. at 3.

Wong further testified that "AES did not instruct ADA leadership nor any ADA employee . . . how to run the day-to-day activities at ADA's [Plant] or how to perform work in connection therewith." Id. at 2. Furthermore, Sewell testified that "daily safety briefings were conducted by ADA supervisors[,]" and "safety policies and procedures were developed and maintained by ADA and not AES." Record Document 55-7 at 2. Wong confirmed that ADA maintains and develops its own safety policies, procedures, and OSHA logs that are separate and apart from AES. See Record Document 55-5 at 4. Remedies failed to produce any evidence to contradict these facts.[3] Therefore, no genuine issue of material fact exists as to whether AES affirmatively undertook a duty of safety regarding ADA's employees. After reviewing all of the evidence, the Court finds that no duty was owed to Remedies by AES.

**B. Louisiana Workers' Compensation Law.**

Next, Remedies contends that he is entitled to additional damages for AES's intentional act. An employee's remedy for workplace injuries is generally only the receipt of benefits under the Louisiana Workers' Compensation Act. See La. R.S. 23:1032. However, the exclusive remedy

---

[3] In his opposition, Remedies relies to the alleged testimony of Sewell's; however, such testimony is not in the record. See Record Document 66 at 9-10. AES raised this issue in its reply. See Record Document 68 at 6. Remedies failed to request leave to cure this defect.

provision contained in Section 1032 includes a narrow exception for intentional acts committed by the employer. See La. R.S. 23:1032(B). It is undisputed that Remedies received workers' compensation benefits as a result of being injured in the fire while in the course and scope of his employment with ADA. Therefore, to recover any additional damages, Remedies must prove that his injuries were the result of an intentional act by AES or its employees.

"The plaintiff's burden for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting, and Louisiana courts, as well as federal courts sitting in diversity, have consistently noted that the intentional act exception is to be narrowly interpreted." Chiasson v. Hexion Specialty Chems., Inc., No. 11-0959, 2012 WL 3683542, at *6 (E.D. La. Aug. 27, 2012) (citations omitted); see, e.g., Reeves v. Structural Pres. Sys., 731 So. 2d 208, 211-12 (La. 3/12/99); Hodges v. The Mosaic Co., No. 05-5201, 2007 WL 2008503, at *4 (E.D. La. July 6, 2007); Cole v. State Dept. of Pub. Safety & Corr., 825 So. 2d 1134, 1140 (La. 9/4/02). The Supreme Court of Louisiana has mandated that "an intentional act requires that the actor either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." Carrier v. Grey Wolf Drilling Co., 776 So. 2d 439, 441 (La. 1/17/01). "'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" Reeves, 731 So. 2d at 213 (quoting Jasmin v. HNV Cent. Riverfront Corp., 642 So. 2d 311, 312 (La. App. 4 Cir. 8/30/94).

"[M]ere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Reeves, 731 So.2d at 213. The Louisiana Supreme Court has made clear that "[e]ven if the alleged conduct goes beyond

9

aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." Id. at 211. Additionally, "believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act. . . ." Carrier, 776 So. 2d at 441-42 (internal quotation omitted). The standard for prevailing on a claim of intentional act under Louisiana law is "extremely high." Wilson v. Kirby Corp., No. 12-0080, 2012 WL 1565415, at *2 (E.D. La. May 1, 2012).

Remedies contends that the evidence suggests that "AES was aware of the safety issues at [ADA's Plant], including the need for engineering controls like nitrogen injection systems to mitigate the risk of explosions[,]" and "[a] jury could reasonably conclude that AES knew that an explosion was 'going to happen; it's just a matter of time' due to its failure to address the known safety hazards at the plant." Record Document 66 at 14. Remedies relies on the opinion of his petroleum engineer expert, Eugene Sweeney ("Sweeney"), who stated that "the most effective way to mitigate the risk that resulted in this incident is to use engineering controls in combination with very systematic administrative controls (policies and procedures)." Record Document 65-4 at 16. Sweeney further opined that one of the controls that should have been implemented was the nitrogen injection system. See id.

The evidence demonstrates that AES neither consciously desired nor had substantial certainty that the injury at ADA's Plant would occur. AES never exercised control over the day-to-day management or operations of ADA. See Record Document 55-5 at 2. On the day of the injury, ADA controlled the safety, supervision, and management of ADA's employees at ADA's

10

Plant—not AES. See id. at 3. AES did not instruct ADA leadership nor any ADA employee on how to run the day-to-day activities at ADA's Plant or how to perform their work. See id. at 2. The daily safety briefings, including the one that took place on the day of the injury, were conducted by ADA supervisors. See id. at 3. There is no evidence to contradict that ADA maintained and developed its own safety policies, procedures, and OSHA logs that were separate and apart from AES. See Record Document 55-5 at 4. Therefore, no genuine issue of material fact exists to AES's role in the safety, supervision, and management of ADA's employees at ADA's Plant. Without control over ADA's safety policies, daily operations, or employee supervision, AES could not foresee or ensure the likelihood of any specific outcome related to ADA's activities. The uncontroverted evidence does not show that AES knew with substantial certainty that any harm would follow from its conduct. Furthermore, there is no evidence indicating that AES consciously desired the injury or any physical harm to occur at ADA's Plant. After reviewing all of the evidence, the Court finds that AES's conduct did not rise to the level of an intentional tort.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that AES's motion for summary judgment (Record Document 55) is **GRANTED**. All Remedies's claims filed against AES are **DISMISSED**.

A judgment consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 27th day of January, 2025.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE