# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | |
|---|---|
| ROBERT REMEDIES | CIVIL ACTION NO. 23-454 |
| VERSUS | JUDGE DONALD E. WALTER |
| ADVANCED EMISSIONS SOLUTIONS INC. ET AL. | MAGISTRATE JUDGE MCCLUSKY |

## MEMORANDUM RULING

Before the Court is a motion for summary judgment filed by Defendant ADA Carbon Solutions Red River LLC ("ADA"). See Record Document 58. In response, Plaintiff Robert Remedies ("Remedies") filed an opposition, and ADA replied. See Record Documents 65 and 69. For the reasons stated below, ADA's motion for summary judgment (Record Document 58) is **GRANTED**.

## BACKGROUND

This is a workplace injury case. On April 22, 2021, Remedies was injured in a fire at ADA's plant in Coushatta, Louisiana, while in the course and scope of his employment. See Record Document 58-4 at 13. The Coushatta plant processes lignite coal to produce activated carbon. See Record Document 65-4 at 4. This process involves transporting lignite to various locations within the plant, and the Coushatta plant used dust collectors to facilitate that transfer. See id. One of the potential dangers associated with a dust collector is the presence of carbon monoxide. See Record Document 58-5 at 9-10.

Only one dust collector is at issue in this motion. See Record Document 65-9 at 19. For several days prior to the incident, the carbon monoxide analyzer in that dust collector intermittently registered a high level of carbon monoxide. See id. 19-20. A higher level of carbon monoxide is

indicative of a fire inside the dust collector. <u>See</u> Record Document 58-5 at 10. Although the analyzer was registering high levels of carbon monoxide, the analyzer was believed to be malfunctioning. <u>See</u> Record Document 65-5 at 11.

On April 22, 2021, ADA's Coushatta plant was in the process of completing a turnaround[1] and resuming its normal operations. <u>See</u> Record Document 65-4 at 4. That morning, the analyzer was giving a reading of zero. <u>See</u> Record Document 58-5 at 12-13. ADA sent Justin Griffith ("Griffith"), an instrumentation technician, to inspect the analyzer. <u>See id.</u> Griffith determined the analyzer could not pick up the actual reading because the carbon monoxide level was above the maximum level that the analyzer could read. <u>See id.</u> at 15-16. Griffith replaced it with a new analyzer, and, after calibrating the new analyzer several times, the new analyzer read that the carbon monoxide levels in the dust collector were extremely high. <u>See id.</u> at 17-18. Griffith disconnected the new analyzer and placed it on top of the duct to avoid damaging it. <u>See id.</u> Because Griffith disconnected the new analyzer, the control room was no longer receiving accurate carbon monoxide readings. <u>See id.</u> at 21.

Griffith informed Tony Miles ("Miles"), an operator in the control room, that carbon monoxide readings were higher than the analyzer could read and that anyone attempting to empty the dust collector should first use a handheld carbon monoxide sniffer. <u>See id.</u> at 20-21; <u>see also</u> Record Document 65-5 at 4. Miles later informed Joe Falcon ("Falcon"), Remedies's supervisor, that the dust collector had to be cleaned out. <u>See</u> Record Document 58-7 at 7. However, Miles failed to inform Falcon that the dust collector had carbon monoxide in it and that Griffith left the carbon monoxide analyzer out of the machinery. <u>See id.</u> Therefore, when Falcon checked the

---

[1] Turnarounds are large-scale pre-scheduled maintenance operations that require detailed planning and execution. Turnarounds are carried out during a plant shutdown.

control room board to determine if the dust collector had carbon monoxide inside, the control room board displayed a zero reading. See id. at 8. For this reason, Falcon, who did not know about the high carbon monoxide levels, asked Remedies and his co-worker to empty the coal dust without first manually sniffing the coal collector. See id. at 8, 12.

When Remedies and his co-worker arrived at the dust collector, they initially attempted to remove the "double dump" doors to safely clear the coal dust as these doors were at the lowest point of the collector. See Record Document 58-4 at 9. However, they were unable to remove the bolts securing the doors. See id. at 10. Remedies explained that they abandoned the double dump door approach because it was taking too long. See id. at 9. Instead, Remedies and his co-worker decided to open the manway door. See id. at 10. This door was located above Remedies's head and posed a greater risk as it allowed coal dust to disperse over a wider area. See id. at 12. When the manway door was opened, a fire ignited, injuring both Remedies and his co-worker. See id. at 13.

As a result of his injuries from the fire, Remedies received workers' compensation benefits. See Record Document 58-4 at 6. ADA filed this motion for summary judgment, arguing that workers' compensation is the exclusive remedy for this injury. See Record Document 58-2 at 11. However, Remedies contends a genuine issue of material fact exists as to whether he is entitled to additional damages for ADA's intentional acts because "the litany of ADA's failures" made his injuries substantially certain to occur. Record Documents 65 at 7, 74 at 8.

## LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th

Cir. 2010). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. See id. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (quoting Fed. R. Civ. P. 56(c)).

**B. Intentional Act Exception.**

Subject matter jurisdiction in this matter is based on diversity. Thus, Louisiana tort law applies. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938) (holding that a federal court sitting in diversity jurisdiction applies the substantive law of the forum state). Under Louisiana's workers' compensation law, when a "principal" hires a contractor to perform work that is "a part" of the principal's "trade, business, or occupation," the principal is liable to pay workers' compensation benefits to any injured employee of the contractor. La. R.S. 23:1061. The principal is commonly referred to as the "statutory employer." Thompson v. Georgia Pac. Corp., 993 F.2d 1166, 1168 (5th Cir. 1993).

In exchange for the responsibility placed on statutory employers, the statute affords them immunity from tort liability to their statutory employees. See id. Thus, an employee's remedy for workplace injuries is generally only the receipt of benefits under the Louisiana Workers' Compensation Act. See La. R.S. 23:1032. However, the exclusive remedy provision contained in

Section 1032 includes a narrow exception for intentional acts committed by the employer. See La. R.S. 23:1032(B). It is undisputed that Remedies received workers' compensation benefits as a result of being injured in the fire while in the course and scope of his employment with ADA. Therefore, to recover any additional damages, Remedies must prove that his injuries were the result of an intentional act by ADA or its employees.

"The plaintiff's burden for showing the elements of an employer's intentional act within the meaning of the statutory exception is exacting, and Louisiana courts, as well as federal courts sitting in diversity, have consistently noted that the intentional act exception is to be narrowly interpreted." Chiasson v. Hexion Specialty Chems., Inc., No. 11-0959, 2012 WL 3683542, at *6 (E.D. La. Aug. 27, 2012) (citations omitted); see, e.g., Reeves v. Structural Pres. Sys., 731 So. 2d 208, 211-12 (La. 3/12/99); Hodges v. The Mosaic Co., No. 05-5201, 2007 WL 2008503, at *4 (E.D. La. July 6, 2007); Cole v. State Dept. of Pub. Safety & Corr., 825 So. 2d 1134, 1140 (La. 9/4/02). The Supreme Court of Louisiana has mandated that "an intentional act requires that the actor either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result." Carrier v. Grey Wolf Drilling Co., 776 So. 2d 439, 441 (La. 1/17/01). "'Substantially certain to follow' requires more than a reasonable probability that an injury will occur and 'certain' has been defined to mean 'inevitable' or 'incapable of failing.'" Reeves, 731 So. 2d at 213 (quoting Jasmin v. HNV Cent. Riverfront Corp., 642 So. 2d 311, 312 (La. App. 4 Cir. 8/30/94).

"[M]ere knowledge and appreciation of a risk does not constitute intent, nor does reckless or wanton conduct by an employer constitute intentional wrongdoing." Reeves, 731 So.2d at 213. The Louisiana Supreme Court has made clear that "[e]ven if the alleged conduct goes beyond

aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." Id. at 211. Additionally, "believing that someone may, or even probably will, eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act. . . ." Carrier, 776 So. 2d at 441-42 (internal quotation omitted). The standard for prevailing on a claim of intentional act under Louisiana law is "extremely high." Wilson v. Kirby Corp., No. 12-0080, 2012 WL 1565415, at *2 (E.D. La. May 1, 2012).

Remedies argues that there are genuine issues of material fact to suggest that the ADA personnel knew that an explosion in the dust collector packed with smoldering lignite dust and obnoxiously high carbon monoxide levels was substantially certain to occur under the facts of this case. See Record Document 65 at 29. Remedies asserts that the following "litany of ADA's failures" made his injuries substantially certain to occur. Record Document 65 at 7. First, the carbon monoxide analyzer in the dust collector registered a high level of carbon monoxide for several days prior to the incident. See Record Document 65-9 at 19-20. Remedies cites to the deposition of Miles, the operator in the control room, who testified that when there are high levels of carbon monoxide registering, the proper procedure is to send an employee in with an infrared camera to see if there is a hot spot. See Record Document 65-5 at 11. Miles further testified that if there is not a hot spot, then the employee would take a handheld device to check the air around the dust collector. See id. However, Remedies and his co-worker were never told to manually sniff the coal collector before emptying it. See Record Document 58-7 at 8, 12.

Next, Remedies asserts that ADA's Corporate Health and Safety Director, Tim Whatley, testified that the facts surrounding this incident pointed directly toward a substantially certain result of a fire. See Record Document 65-6 at 13. Finally, Remedies retained an expert witness, Benjamin Gibson ("Gibson"). Gibson is a project management and safety professional with extensive education, training, and experience in industry standards, codes, and safety regulations related to protecting the health and safety of workers on project sites. See Record Document 65-3 at 6-7. After reviewing the evidence and testimony in this matter, Gibson concluded, "Given the hazard[ous] conditions present, with a high level of the coal dust in the collector, and the high CO level as indicated by the CO analyzer, it was substantially certain an incident would [occur] under these circumstances." Id. at 25. Gibson further opined that "it was not a matter of if with high levels of CO, the introduction of oxygen would result in a fire and/or deflagration, but only a matter of when." Id. at 37. Remedies contends that these alleged failures by ADA show that this Court should follow the holdings of the Louisiana Supreme Court, the First Circuit Court of Appeal, and the Third Circuit Court of Appeal, and deny this motion for summary judgment. See Higgins v. Williams Energy Partner, L.P., 280 So. 3d 195 (La. App. 1st Cir. 4/10/19); Higgins v. Williams Energy Partner, L.P., 266 So. 3d 897 (La. 3/6/19); Rhine v. Bayou Pipe Coating, 79 So. 3d 430 (La. App. 3 Cir. 11/2/11); Robinson v. N. Am. Salt Co., 865 So. 2d 98 (La. App. 1 Cir. 6/27/03). The Court finds these cases unpersuasive.

In Rhine, an employee was killed while attempting to manually tape a pipe. See Rhine, 79 So. 3d at 431. The tape caught the plaintiff's hand and pulled him between the pipe and the conveyor belt. See id. at 437. Roughly two years earlier, a similar incident occurred; however, the prior employee was not severely injured. See id. at 436-37. The supervisors were aware of the prior injury and that adding protective guards to the taping machine would prevent further injuries.

See id. Rather than adding the protective guards, the supervisors advised the employees at safety meetings every morning "to be careful about putting their hands onto the turning pipe or near the conveyor or pinch points." Id. at 437. Under these facts, the Third Circuit found that knowledge of the previous incident was sufficient evidence to show that the supervisors knew that the injury to the second employee was substantially certain to follow from the conduct of the supervising employees in not appropriately guarding the conveyor process. See id. 440-41. Therefore, the Third Circuit found that the trial court was not manifestly erroneous in finding the employer liable for an intentional act. See id. at 441.

The facts of this case differ for two key reasons. First, a previous incident did not occur in this case. Second, not all supervisors knew of the danger present. Although there is evidence to suggest that Griffith and Miles knew of the high carbon monoxide levels, there is no evidence that Remedies's direct supervisor knew about the carbon monoxide levels.[2] See Record Document 58-7 at 7. Miles failed to inform Falcon that the dust collector had carbon monoxide in it and that Griffith disconnected the new carbon monoxide analyzer. See id. Therefore, the supervisor that sent Remedies to empty the coal dust did not have knowledge that the explosion in the dust collector was substantially certain to occur.

Additionally, in Higgins, the plaintiff was injured in an explosion resulting from the over-pressurization of an out-of-service reboiler while in the course and scope of his employment. See Higgins v. Williams Energy Partner, L.P., 267 So.3d 1133, 1135 (La. App. 1 Cir. 12/12/18). The plaintiff introduced evidence suggesting that various employees had knowledge of the danger posed by the reboilers, including multiple warnings made to the employer. See id. at 1140. The

---

[2] Miles does not recall Griffith advising him of the high carbon monoxide reading, but Miles does not dispute that Griffith had done so. See Record Document 65-5 at 9, 19, 25.

trial court granted the employer's motion for summary judgment, and the First Circuit affirmed.

See id. at 1142. The First Circuit reasoned:

> After a de novo review of the record, it is clear that the defendant's management was aware that the blocked reboiler was a hazard, but it is not evident that they were substantially certain that the chemical explosion was to occur from that hazard. The record reveals that the reboiler had been in a potentially hazardous condition since 2001 and had never failed or hurt anyone before the explosion in 2013.

Id. at 1142. However, in a one-paragraph decision, the Louisiana Supreme Court reversed and found that there were "genuine issues of material fact as to whether the defendant is liable to this plaintiff as the result of an intentional act. . . ." Higgins, 266 So.3d at 897. Based on the Louisiana Supreme Court's ruling, the First Circuit issued a separate ruling and held that summary judgment was improper. See Higgins, 280 So. 3d at 203.

As noted by this Court in Rolls v. Packaging Corporation of America, Inc., "[t]he decision on the writ application in Higgins carries no precedential value. Nor are the facts of the underlying case analogous to the evidence presented in this matter: in Higgins, the plaintiff presented evidence of the management team's awareness of specific dangers at the facility where he was injured and decisions regarding the reboiler that exploded." Rolls v. Packaging Corp of Am. Inc., No.18-00188, 2021 WL 2604919, at *4 (W.D. La. June 24, 2021). Here, in contrast, it was Remedies's supervisor, Falcon, who failed to take appropriate action, i.e., telling Remedies and his co-worker to manually sniff the coal collector before emptying the coal dust. See Record Document 58-7 at 8, 12. There is no evidence that Falcon knew of the specific dangers that Remedies claims caused the explosion because Falcon was never told about the disconnected carbon monoxide analyzer. Therefore, the Court finds Remedies's reliance on Higgins unpersuasive.

In Robinson, an employee was injured while repairing a moving conveyor belt. See Robinson, 865 So. 2d at 102. The employer did not shut down the conveyor belt because it did not

want its production stopped. See id. The First Circuit relied on the testimony of the plaintiff's expert witness, a mechanical engineer. See id. at 105. The expert explained that the employee was in a non-stationary basket with a chipping hammer, attempting to repair the frame of the elevated, moving conveyor belt near a pinch point.[3] See id. at 107-08. The expert opined that the combination of the variety of factors made this accident inevitable. See id. Therefore, the First Circuit held that the factual evidence established that the employer knew the accident was substantially certain to occur, and therefore, the court upheld the jury's finding. See id. at 108-09.

This Court elects to follow the United States Fifth Circuit Court of Appeals and the Louisiana Fourth Circuit Court of Appeal and disagrees with the reasoning of the majority opinion in Robinson. See Harvey v. Preload, L.L.C., No. 23-30120, 2023 WL 6442598, at *3 (5th Cir. Oct. 3, 2023) (finding the plaintiff's reliance on Robinson unpersuasive); Bergeron v. Murphy Oil, USA, Inc., 903 So. 2d 496, 501 (La. App. 4 Cir. 2005) ("With all due respect to our brethren on the First Circuit, we do not agree with the reasoning of the majority in Robinson."). The Fifth Circuit rejected to follow Robinson because "the majority in Robinson relied, in part, on an expert's after-the-fact analysis to conclude the substantial certainty requirement was met even though there was no evidence that the relevant individual had knowledge or a belief that an accident was substantially certain to occur." Harvey, 2023 WL 6442598, at *3. Additionally, the Louisiana Fourth Circuit declined to follow Robinson because the plaintiff "presented no evidence that the employer had such knowledge, belief, or opinion and since there were no facts to support an essential element to prove an intentional act[,] it was manifest error for the jury to find an intentional act." Bergeron, 903 So. 2d at 501. Similarly, Remedies relies heavily on his expert's

_____

[3] A pinch point is a point near one of the belt rollers and "a particularly dangerous area of the conveyor system. . . ." Id. at 106.

testimony who opined, "Given the hazard[ous] conditions present, with a high level of the coal dust in the collector, and the high CO level as indicated by the CO analyzer, it was substantially certain an incident would [occur] under these circumstances." Record Document 65-3 at 25. However, Remedies presented no evidence that Falcon knew of the specific dangers before ordering Remedies to empty the dust collector.

The Court finds the facts of this case to be analogous with the facts of Rolls. See Rolls, 2021 WL 2604919. In Rolls, an employee was involved in a workplace explosion when a cloud of highly flammable vapor escaped from a tank and was ignited by sparks from nearby welding. See id. at *2. The superintendent "ordered that the tank not be fully drained before the 'hot work' began, leaving ten feet of foul condensate and twenty feet of vapor in the tank." Id. at *3. The plaintiff argued that the intentional act exception applied because the employer knew that an explosion was substantially certain to occur when it allowed welding to take place near a tank without first draining and purging the highly flammable substance from the tank. See id. In rejecting the plaintiff's argument, this Court held the plaintiff failed to show that the superintendent was aware that the explosion was substantially certain to follow. See id. This Court granted the employer's motion for summary judgment, and the Fifth Circuit affirmed. See id. at *4; Rolls on behalf of A. R. v. Packaging Corp. of Am. Inc., 34 F.4th 431, 442 (5th Cir. 2022) The Fifth Circuit noted that the superintendent responsible for the incident was unaware that welders would be working next to the tank in question. See id. at 442. Thus, the Fifth Circuit reasoned that the superintendent's decision not to drain the tank "remains a far cry from 'consciously subject[ing] an employee to a hazardous or defective work environment where injury to the employee is nearly inevitable' as the substantially-certain test demands." Id. (quoting Guillory v. Domtar Indus. Inc., 95 F.3d 1320, 1327 (5th Cir. 1996)).

In <u>Johnson</u>, the plaintiffs "cleverly reduced [their argument] to the assertion that explosions inevitably result from the combination of fuel, oxygen, and an ignition source." <u>Johnson v. Packaging Corp. of Am., Inc.</u>, 18-613, 2021 WL 3201370, at *6 (M.D. La. July 28, 2021). (citations omitted). Attempting to prove that the employer was substantially certain that the injury was going to occur, the plaintiffs relied on three statements by the employer's employees. <u>See id.</u> First, a mechanical maintenance planner of the employer testified that the foul condensate in the tank was flammable. <u>See id.</u> Second, the employer's Director of Safety testified that it was known that the foul condensate tank had not been emptied before the welding was performed. <u>See id.</u> Third, the employer's Director of Safety further testified that the employer knew that the foul condensate tank was fitted with a valve to let oxygen in. <u>See id.</u> The plaintiffs imputed the knowledge of the employees to the employer and concluded that the employer knew that the combination of those three components meant that the explosion was inevitable. <u>See id.</u> The court rejected the plaintiffs' argument and reasoned that the plaintiffs only showed that the employer "knew that there was the potential for the release of gas or intake of oxygen, not that [the employer was] substantially certain that either of those things would inevitably occur at the exact time there was an ignition source produced by the welding." <u>Id.</u> at *7. The court granted the motion for summary judgment in favor of the employer. <u>See id.</u>

Remedies attempts to impute the intent required to ADA by listing ten examples of ADA failing to follow policies and best procedures.[4] The Louisiana Supreme Court and appellate courts

---

[4] "1. Knowing that high CO levels had been present in the dust collector for days before the incident—which alarms were repeatedly disregarded by the ADA personnel;
2. Knowing that high dust build-up levels had been present in the dust collector's confined space;
3. Knowing that an explosion is virtually inevitable when three elements comprising a "fire triangle" come together—and two of them (fuel and ignition source) had already been present in the dust collector (missing only oxygen, which was bound to be introduced into the mix by the opening of the doors necessary to do the cleanout);

"narrowly construe[] the intentional act exception according to its legislative intent and have almost universally held that employers are not liable under the intentional act exception for violations of safety standards or for failing to provide safety equipment." Reeves, 731 So. 2d at 211.[5] Here, Remedies must show "that the person who act[ed]"–Remedies's supervisor, Falcon, who sent him to clean the dust collector–did so "know[ing] that the result [was] substantially certain to follow from his conduct." Reeves, 731 So.2d at 211. It is undisputed that Miles did not inform Falcon that the dust collector had carbon monoxide in it and that Griffith left the carbon monoxide analyzer out of the machinery. See Record Document 58-7 at 7. When Falcon checked the control room board to determine if the dust collector had carbon monoxide inside, the control room board displayed a zero reading, and Falcon believed that reading was accurate. See id. at 8.

---

4. Not bothering to conduct a [Job Safety Analysis]

5. Not issuing a line break permit;

6. Not training the plaintiff and Mr. Perkins on how to do the dust collector cleanup properly—especially because the plaintiff had never it before;

7. Not establishing any written policies and procedures for the plaintiff and Mr. Perkins to follow in cleaning out the dust collector;

8. Not sniffing out the dust collector beforehand or otherwise mitigating the known hazard, though Mr. Griffith had warned that that was required before anyone should work on the dust collector;

9. Failing to communicate properly and efficiently and prioritize the risk of abnormally high CO levels in the dust collector; and

10. Failing to do a walkthrough of the job with the plaintiff and Mr. Perkins, especially because the confirmed CO levels were—not only off the charts—but also an issue for an extended period of time." Record Document 65 at 26-27.

[5] See also Bazley v. Tortorich, 397 So.2d 475, 480 (La.1981) (finding that operating a garbage truck without a working horn, disregarding mechanical and electrical maintenance standards, failing to keep a lookout, failing to stop in a safe place, and failing to warn plaintiff of danger did not amount to an intentional act); Williams v. Gervais F. Favrot Co., Inc., 573 So. 2d 533, 542 (La. App. 4 Cir. 1/7/91) (finding no intentional act exception for violations of OSHA and other accepted industry safety standards); Jacobsen v. Southeast Distribs., Inc., 413 So. 2d 995, 998 (La. App. 4 Cir. 4/12/82) (finding that failure to supply requested safety equipment was not an intentional tort within the meaning of the intentional act exception to Louisiana's workers' compensation law); Jasmin, 642 So. 2d at 316 (finding that the failure to provide safe working environment in grain storage bin did not amount to an intentional act); Leger v. Hardy Rice Drier, Inc., 640 So.2d 650, 652-53 (La. App. 3 Cir. 6/1/94) (finding that maintaining forklift in unsafe condition did not amount to an intentional act).

Therefore, when Falcon sent Remedies to the dust collector, he did not know that the dust collector presented a danger. Therefore, ADA did not have the requisite intent for the intentional act exception.[6] "For better or worse, the Louisiana Legislature has set an extremely high bar for a plaintiff to surmount the intentional act exception. . . ." Johnson, 2021 WL 3201370, at *7.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that Defendant ADA's motion for summary (Record Document 58) is **GRANTED**.

An order consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 27th day of January, 2025.

_Donald E. Walter_
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

---

[6] See Caceres v. Preload, L.L.C., No. 23-30354, 2023 WL 7986594, at *2 (5th Cir. Nov. 17, 2023) (affirming summary judgment for the defendant and rejecting plaintiff's argument that the evidence "in the aggregate, adds up to satisfy the 'substantial certainty' standard" because the employer "was not aware of several of these facts prior to the accident"); Populars v. Trimac Transp., Inc., No. 22-30413, 2023 WL 20866, at *2 (5th Cir. Jan. 3, 2023) (affirming summary judgment for the defendant despite evidence that the plaintiff's injury was inevitable because the plaintiff failed to show that the employer "knew that [the plaintiff's] injury was inevitable").